# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE JONES,<br><br>    Petitioner,<br><br>    v.<br><br>JOHN D. HARTLEY,<br><br>    Respondent. | 1:08-cv-00166 OWW DLB HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR), following his conviction for second degree murder with two years concurrent for theft. Petitioner is serving a sentence of fifteen years to life.

In the instant petition for writ of habeas corpus Petitioner does not challenge the constitutional validity of the judgment; rather, he challenges the Board of Parole Hearings' (Board) August 2, 2006 decision finding him unsuitable for release on parole.

In 2006, Petitioner filed a petition for writ of habeas corpus in the Orange County Superior Court claiming that the Board's 2006 decision denying him parole violated his constitutional rights. (Exhibit A, to Answer.)

1

On January 23, 2007, the superior court denied the petition in a reasoned decision, finding that he Board's decision to deny parole based on the facts and circumstances of the commitment offense was supported by the evidence in the record. (Exhibit B, to Answer.)

Petitioner then raised the same claims in petitions to the California Court of Appeal and the California Supreme Court, and both petitions were summarily denied. (Exhibits C, D, E, F, to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on February 1, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on June 27, 2008, and Petitioner filed a traverse on August 4, 2008. (Court Docs. 15, 18.)

## STATEMENT OF FACTS

On February 10, 1988, Petitioner and co-defendant, Ramon Birl, had been at Rachel Carter's house and went to the store for snacks and sodas. Upon arriving back at the house, Petitioner and Birl heard Rachel screaming from inside the house. Petitioner and his co-defendant picked up some rocks and ran inside the house. Once inside the house, they proceeded to hit victim, Richard Hopking, in the head and shoulders with the rocks and a trophy-which resulted in the victim's death. Petitioner and his co-defendant went through the house and cleaned up everything. Then, the two placed the victim's body in plastic bags and put the body in the trunk of the victim's Cadillac which was parked in the garage. Petitioner, Birl, and Rachel, drove off in the victim's Cadillac and used the victim's credit card to purchase gasoline. When the car stopped running, they called a friend to pick them up. Birl was dropped off at a home, and Jones and Rachel stopped at their friends' house. The next day Rachel directed the police to the location of the victim's car and body in the trunk. Prior to abandoning the car, they took a portable telephone from it.

(Petition, Exhibit 1, at 8-9.)

## DISCUSSION

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II. Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Petition, Exhibit 1.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the

commitment offense remain probative to the statutory determination of a
continuing threat to public safety.

Id. at 1214.[1]

The Board denied parole based on the circumstances of the commitment offense and Petitioner's lack of sufficient insight underlying the reasoning for the offense. The circumstances of the commitment offense were obviously carried out in an especially heinous, atrocious and cruel manner. The sixty-year-old victim was chased around his own home and beaten repeatedly with rocks and a trophy. As a result, the victim suffered 19 lacerations to the head and face, massive fractures to the skull, lacerations to the brain, and a broken rib. There was also ligature marks on his forearm and wrist consistent with use of electric cord as a ligature prior to death. As explained below, there was also evidence that the murder was premeditated. It is apparent that this was not a "quick" killing and it demonstrated a callous disregard for human suffering. Certainly, there is some evidence that the Board's finding that the commitment offense was carried out in an especially heinous, atrocious and cruel manner.

While Petitioner admitted that he committed the murder of Mr. Hopking, there is some inconsistency between Petitioner's claim that it was a rescue mission and the appellate record, which is presumed correct. A prisoner's credibility is a vital aspect of the Board's consideration of "all relevant, reliable information . . . [including a prisoner's] past and present attitude toward the crime, in rendering a determination of whether the prisoner remains an unreasonable risk of danger to society if released. 15 Cal. Code Regs. § 2402(a), (b). There was evidence that Petitioner and Birl discussed with witness, Laura Palmer, attacking the victim in the precise manner accomplished well before the actual confrontation. (Petition, Exhibit 1 at 39-40.) They discussed using a rock to hit the victim on the head. (Id. at 40.) They also discussed taking care of Mr. Hopking and getting him out of Rachel's hair, and Petitioner said he would take care of him because he wanted his Cadillac. (Id.) Petitioner claims he went into the residence with rocks

---

[1] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

7

because he heard Rachel screaming; yet, Petitioner continued to chase and beat Mr. Hopking to the point of his death-well beyond the necessary force to secure the safety of Rachel. Thus, there is some evidence to support the Board's finding that Petitioner has not gained sufficient insight into the commitment offense because there was evidence that the murder was premeditated, which he has made not attempt to explain. Although the psychological evaluation noted that there appeared to be missing pieces in Petitioner's knowledge and understanding of the events, but found it did diminish Petitioner's acceptance of responsibility or remorse, such finding was apparently based on the version of the facts related by Petitioner and did not consider the factual discrepancies or inconsistencies. During the hearing, the Board provided Petitioner with an opportunity to explain the discrepancies as well as to respond to the Board's concern regarding them. (Id. at 33-35.) Because Petitioner failed to do so, the Board was legitimately concerned that Petitioner had not gained sufficient insight into the circumstances underlying the commitment offense and therefore remained a risk of danger to public safety if released. Thus, it was reasonable for the Board to recommend additional self-help therapy to gain further insight, as it was in the best position to evaluate the credibility of petitioner's version of the offense. Given that the Board did not find Petitioner's version of the commitment offense to be credible and the psychological report did not elaborate on the discrepancies, there was "some evidence" in the record to support its conclusion that Petitioner has not developed sufficient insight underlying the reasoning behind the commitment offense and remains unsuitable for release on parole. Lawrence, 44 Cal.4th at 1228; In re Shaputis, 44 Cal.4th 1241, 1246 (2008) (circumstances of commitment offense and inmate's current attitude toward his crime are, by statute, factors relevant to his suitability for parole). In light of these circumstances, this Court cannot conclude that the state court's denial of Petitioner's claim was contrary to or an unreasonable application of Supreme Court precedent.

While not a statutory basis to deny parole, the Board is required to consider statements submitted by such officials. See Cal. Penal Code § 3046(c) (the Board is required to consider statements and recommendations by the judge, district attorney, and sheriff); In re Dannenberg, 34 Cal.4th 1061, 1084 (2005). The Board considered a letter of opposition from the Sheriff of

Orange County and opposition from the District Attorney's Office. (Petition, Exhibit 1, at 22-23, 38-42.) This factor was properly considered, among others, in determining whether Petitioner was suitable for release.

The Board also considered the positive factors in support of suitability pursuant to § 2402(d). During the hearing, the Board acknowledged that Petitioner had completed traingin in various vocations in oxy and fuel welding, air conditioning and refrigeration, and School of Small Business. (Id. at 25-26.) In addition, Petitioner had various job assignments, including work in PIA furniture, forklift operation, machine feeding, and cabinet assembly, and Petitioner had favorable letters of commendation. (Id. at 25-28.) Petitioner has participated in Alcoholics Anonymous and Narcotics Anonymous, anger management, and has solid parole plans. (Id. at 19-22, 28-30.) The Board pointed out that Petitioner had no prior criminal record, had only one serious rules violation during his incarceration, a favorable psychological report, and stated they were convinced he was going in the right direction and with additional insight he will present himself as a more suitable candidate for release on parole. (Id. at 52-54.) However, on balance, these positive factors did not outweigh the factors in support of unsuitability.

Petitioner contends the Board has relied solely on the immutable circumstances of the underlying offense and his criminal history prior to incarceration. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense. Here, the Board based its decision on the circumstances of Petitioner's offense and lack of underlying insight. Thus, this Court cannot conclude that the Board's denial of parole has

resulted in a due process violation when considering the offense, the lack of insight, and the time served to date. As discussed above, because the offense was atrocious the Board reasonably found Petitioner needed to demonstrate further evidence of sufficient insight, and as of the date of the hearing Petitioner had served approximately 16 years and nine months on a 15-years-to-life sentence. In addition, Petitioner has not been denied parole forever; rather, the Board pointed out that he was headed in the right direction and he would be considered again for parole in one year.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 8, 2010**         /s/ Dennis L. Beck
                              UNITED STATES MAGISTRATE JUDGE